1

2

3

4                    **UNITED STATES DISTRICT COURT**

5                          **DISTRICT OF NEVADA**

6                                  * * *

7    LAMAR BROWN,                          Case No. 2:22-cv-00564-RFB-BNW

8                    Petitioner,                      **ORDER**

9         v.

10   RONALD OLIVER,[1] *et al.*,

11                   Respondents.

12

13        Before the Court is Petitioner Lamar Brown's first-amended petition for a writ of habeas

14   corpus under 28 U.S.C. § 2254 (ECF No. 25), which alleges that his trial counsel failed to give

15   him proper advice prior to his plea, his trial counsel failed to investigate and advise him to

16   withdraw his guilty plea, and his guilty plea was not voluntarily, knowingly, and intelligently

17   entered. For the reasons discussed below, the Court grants the petition.

18   **I.    BACKGROUND**

19        On January 17, 2008, the Nevada District Court for Clark County adjudged Brown guilty

20   of attempted sexual assault. ECF No. 30-5. Brown was sentenced to 36 to 96 months, ordered to

21

22   _____

23   [1] The state corrections department's inmate locator page states that Brown is incarcerated at
     Southern Desert Correctional Center. Ronald Oliver is the current warden for that facility. At the
     end of this order, this Court directs the clerk to substitute Ronald Oliver as a respondent for
     Respondent State of Nevada. See Fed. R. Civ. P. 25(d).

register as a sex offender, and given "a special sentence of lifetime supervision . . . to commence upon release from any term of imprisonment, probation or parole." Id. Six years later, on November 10, 2015, Brown was charged with violating his lifetime supervision conditions. ECF No. 30-9. Specifically, the State alleged that Brown "fail[ed] to participate in counseling as deemed necessary by Nevada Division of Parole and Probation and/or . . . fail[ed] to report to Nevada Division of Parole and Probation as directed and/or . . . chang[ed] his address without first obtaining permission from his supervising officer." Id. Brown entered into a guilty plea agreement whereby the State had no opposition to Brown receiving probation and agreed to make no recommendation as to the terms and conditions of Brown's probation. ECF No. 30-12. Further, the agreement provided that if Brown received an honorable discharge from probation, he would be able to withdraw his plea and plead guilty to failing to register, a misdemeanor. Id. Importantly, Brown's plea agreement also provided that he understood and agreed that if "an independent magistrate, by affidavit review, confirms probable cause against [him] for new criminal charges . . . , the State [would] have the unqualified right to argue for any legal sentence and term of confinement allowable for the crime(s) to which [he was] pleading guilty, including the use of any prior convictions [he] may have to increase [his] sentence as an habitual criminal to five (5) to twenty (20) years." Id. at 3. Brown entered his guilty plea on December 1, 2015. ECF No. 30-11.

Before Brown could be sentenced, he was arrested and charged with robbery with the use of a deadly weapon in a different case. ECF No. 30-26. The State filed a notice of intent to seek habitual criminal status in Brown's current case. Id. The Nevada District Court for Clark County adjudged Brown a habitual criminal and sentenced him to 5 to 20 years. Id. at 7. Brown appealed his judgment of conviction, and the Nevada Court of Appeals affirmed on March 14, 2018. ECF No. 30-64.

Brown filed a motion to modify or correct his illegal sentence, a motion to withdraw his plea, and a petition for postconviction review. ECF Nos. 31-1, 31-2, 31-5. The state court denied the motions and petition. ECF No. 31-32. Brown appealed, and the Nevada Court of Appeals affirmed on September 13, 2021. ECF No. 31-58.

Brown transmitted his *pro se* federal habeas petition to this Court on or about February 4, 2022. ECF No. 1. The Court appointed counsel for Brown. ECF Nos. 17, 19. Brown filed his counseled first-amended petition on August 17, 2023. ECF No. 25. Respondents answered on October 16, 2023. ECF No. 29. Brown replied on January 19, 2024. ECF No. 37.

The Court's order follows.

## II.   GOVERNING STANDARDS OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405–06 (2000), and citing Bell v. Cone, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly

established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 75 (quoting Williams, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." Id. (quoting Williams, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer, 538 U.S. at 75); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III.    DISCUSSION

The Court now turns to Brown's first-amended petition for a writ of habeas corpus under 28 U.S.C. § 2254. Brown alleges that his trial counsel failed to give him proper advice prior to his plea, his trial counsel failed to investigate and advise him to withdraw his guilty plea, and his guilty plea was not voluntarily, knowingly, and intelligently entered. The Court now addresses each basis for habeas relief in turn.

///

///

4

### A.      Ground 1—Ineffective Assistance of Counsel

In ground 1, Brown alleges that he was denied the effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights.

### 1.      Legal Standard

In Strickland v. Washington, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel. A petitioner must demonstrate both (1) that the attorney's "representation fell below an objective standard of reasonableness" and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Additionally, to establish prejudice under Strickland, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

When the ineffective assistance of counsel claim is based "[i]n the context of a guilty plea, the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty." Lambert v. Blodgett, 393 F.3d 943, 979 (9th Cir. 2004). As such, "[t]o succeed, the defendant must show that counsel's assistance was not within the range of competence demanded of counsel in criminal cases." Id. at 979–80. And regarding the prejudice prong, the petitioner "must show that there is a

reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Lafler v. Cooper, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under Strickland, establishing that the decision was unreasonable is especially difficult. See Richter, 562 U.S. at 104–05. In Richter, the United States Supreme Court clarified that Strickland and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. Id. at 105; see also Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's Strickland determination under AEDPA, both AEDPA and Strickland's deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

### 2. Ground 1(a)—Improper Advice to Plead Guilty

In ground 1(a), Brown alleges that his trial counsel failed to properly advise him that the current amendment to Nevada's lifetime supervision statute could not be applied to him due to the Ex Post Facto clause. See U.S. CONST. art. I, § 10.

### a. History of Nevada's Lifetime Supervision Statute

Nevada began imposing a special sentence of lifetime supervision on certain offenders in 1995. See Palmer v. State, 59 P.3d 1192, 1194 (Nev. 2002) ("Lifetime supervision is a mandatory special sentence imposed upon all offenders who have committed sexual offenses after September

30, 1995."). Pursuant to NRS 176.0931(1), "[i]f a defendant is convicted of a sexual offense, the court shall include in sentencing, in addition to any other penalties provided by law, a special sentence of lifetime supervision." This special sentence "commences after any period of probation or any term of imprisonment and any period of release on parole." Nev. Rev. Stat. § 176.0931(2). Upon a sex offender's release from parole, the State Board of Parole Commissioners "will schedule a hearing to establish the conditions of lifetime supervision." Nev. Admin. Code § 213.290(3).

Prior to 2007, NRS 213.1243—the statute governing the conditions of lifetime supervision—simply provided that "[t]he board shall establish by regulation a program of lifetime supervision of sex offenders to commence after any period of probation or any term of imprisonment and any period of release on parole. The program must provide for the lifetime supervision of sex offenders by parole and probation officers." 1997 Nevada Laws, ch. 203, § 7 (S.B. 359); 1997 Nevada Laws, ch. 314, § 14 (S.B. 133). The following penalties applied to a violation of lifetime supervision conditions: "[a] person who commits a violation of a condition imposed on him pursuant to the program of lifetime supervision is guilty of: (a) [i]f the violation constates a minor violation, a misdemeanor[,] (b) [i]f the violation constitutes a major violation, a category B felony." Id.

In 2007, NRS 213.1243 was amended to add that "the Board shall require as a condition of lifetime supervision that the sex offender reside at a location only if" the following conditions were met: (a) "[t]he residence has been approved by the parole and probation officer assigned to the person," (b) "[i]f the residence is a facility that houses more than three persons who have been released from prison, the facility for transitional living for released offenders that is licensed pursuant to chapter 449 of NRS," and (c) "[t]he person keeps the parole and probation officer informed of his current address." 2007 Nevada Laws, ch. 418, § 5 (S.B. 354).

In 2007, NRS 213.1243 was further amended to add that that "the Board shall require as a condition of lifetime supervision that the sex offender . . . not knowingly be within 500 feet of any place . . . that is designed primarily for use by or for children" if the sex offender "is a Tier 3 offender." 2007 Nevada Laws, ch. 528, § 8 (S.B. 471). A Tier-3 offender "is a sex offender [who] is convicted of a sexual offense . . . against a child under the age of 14 years." Id. The amendment also required the Board to "require as a condition of lifetime supervision" that a Tier-3 offender:

(a)   Reside at a location only if the residence is not located within 1,000 feet of any place, or if the place is a structure, within 1,000 feet of the actual structure, that is designed primarily for use by or for children, including, without limitation, a public or private school, a school bus stop, a center or facility that provides day care services, a video arcade, an amusement park, a playground, a park, an athletic field or a facility for youth sports, or a motion picture theater.

(b)   As deemed appropriate by the Chief [Parole and Probation Officer], be placed under a system of active electronic monitoring that is capable of identifying his location and producing, upon request, reports or records of his presence near or within a crime scene or prohibited area or his departure from a specified geographic location.

(c)   Pay any costs associated with his participation under the system of active electronic monitoring, to the extent of his ability to pay.

Id. These 2007 changes all "appl[ied] to any person who is placed under a program of lifetime supervision before, on or after October 1, 2007." 2007 Nevada Laws, ch. 528, § 16 (S.B. 471); 2007 Nevada Laws, ch. 418, § 10 (S.B. 354). And importantly, these 2007 changes also eliminated the misdemeanor punishment for a minor violation of a condition; now a minor or major violation would be punished as a category B felony. 2007 Nevada Laws, ch. 528, § 8 (S.B. 471).

Later, in 2009, NRS 213.1243 was amended to add that "[t]he Board shall require as a condition of lifetime supervision that the sex offender not have contact or communicate with a victim of the sexual offense or a witness who testified against the sex offender." 2009 Nevada Laws, ch. 300, § 2 (A.B. 325).

///

### b.    State Court Determination

In affirming the denial of Brown's state postconviction petition for writ of habeas corpus, the Nevada Court of Appeals held:

> "First, Brown argued counsel was ineffective for failing to argue that the application of a more recent version of the lifetime supervision statute to him violated the Ex Post Facto Clause. A requirement for an Ex Post Facto Clause violation is that the statute applies to events occurring before it was enacted. Weaver v. Graham, 450 U.S. 24, 29 (1981). "[U]nless the Legislature clearly expresses its intent to apply a law retroactively, Nevada law requires the application of the law in effect at the time of the commission of a crime." State v. Second Judicial Dist. Court (Pullin), 124 Nev. 564, 567, 188 P .3d 1079, 1081 (2008).
>
> Brown was convicted of violation of lifetime supervision pursuant to NRS 213.1243. He argued that, because he committed the offenses giving rise to the lifetime supervision requirement in 2006, the version of NRS 213.1243 in effect in 2006, and not the 2009 amendments, should apply to his violation of lifetime supervision. However, lifetime supervision begins only after an offender has expired his prison sentence and has been discharged from any further obligations of parole or probation. Violation of lifetime supervision by a convicted sex offender is a new, separate, and distinct offense. Coleman v. State, 130 Nev. 190, 194-95, 321 P.3d 863, 866-67 (2014). Brown entered the lifetime supervision agreement in 2011, and he violated it in 2014. At all relevant times, the 2009 version of NRS 213 .1243 was in effect, see 2009 Nev. Stat., ch. 300, § 2, at 1299- 1300, and applied to Brown's offense of violation of lifetime supervision. Thus, there was no Ex Post Facto Clause violation, and Brown failed to demonstrate counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by counsel's alleged failure to pursue this defense. Therefore, we conclude the district court did not err by denying this claim without conducting an evidentiary hearing"

(ECF No. 31-58 at 3–4.)

### c.    Ex Post Facto Clause

The Constitution's Ex Post Facto Clause provides that "[n]o State shall . . . pass any . . . ex post facto [l]aw." U.S. Const., art. I, § 10, cl. 1; see also U.S. Const., art. I, § 9, cl. 3 ("No . . . ex post facto [l]aw shall be passed [by Congress].”). The Ex Post Facto Clauses "forbids the Congress and the State to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver

v. Graham, 450 U.S. 24, 28 (1981) (internal quotation marks omitted). This prohibition was intended "to assure that legislative Acts g[a]ve fair warning of their effect and permit individuals to rely on their meaning until explicitly changed" and to "restrict[ ] governmental power by restraining arbitrary and potentially vindictive legislation." Id. at 28–29. There are two "elements that must be present for a criminal or penal law to be ex post facto: it must be retrospective . . . and it must disadvantage the offender affected by it." Id. at 29 (internal footnote omitted).

### d. Analysis

Brown argues that because his underlying sexual assault was committed in 2006, none of the 2007 or 2009 amendments to NRS 213.1243 can be applied to him. Rather, according to Brown, under the 2005 version of NRS 213.1243, his lifetime supervision violations were only chargeable as a misdemeanor, and, as such, the State was not allowed to use either the small or large habitual criminal statutes.

After serving his sentence for attempted sexual assault which included a 'special sentence' of lifetime supervision, Brown signed a lifetime supervision agreement on May 12, 2011. On November 10, 2015, the State filed an Information alleging violations of that agreement, explaining that the violations took place between March 28, 2012, and July 31, 2014. In 2014, a year before Brown was charged with violating his lifetime supervision agreement, the Nevada Supreme Court decided Coleman v. State, 321 P.3d 863 (Nev. 2014). In Coleman, the Nevada Supreme Court explained that "when a person on lifetime supervision violates a condition of that supervision, the violation is a new, separate and distinct offense." Id. at 867. Brown contends that the Nevada Court of Appeals' reliance on Coleman in rejecting his ex post facto claim ignores clearly established federal law. The Court agrees.

Nevada's lifetime supervision requirements constitute a form of punishment—a 'special sentence' according to NRS 176.0931(1)—for the underlying offense, see Palmer, 59 P.3d at 1197, and the 2007 amendments to NRS 213.1243 increased the conditions of lifetime supervision and increased the penalties for violating those conditions when compared to the statute as it existed at the time Brown committed his underlying offense. As such, the second ex post facto inquiry is met: the 2007 version of NRS 213.1243 was disadvantageous to Brown.

Regarding the first ex post facto inquiry, the Nevada Court of Appeals attempts to circumvent any finding of retroactivity by reasoning that Brown's violation of his lifetime supervision conditions constituted a new offense. This reasoning is contrary to federal law. In United States v. Paskow, the Ninth Circuit considered "whether the ex post facto clause is violated when a statutory amendment that increases a penalty to be imposed upon the revocation of supervised release is applied in a case in which the underlying offense was committed before the amendment was adopted but the conduct that led to revocation of supervised release occurred afterwards." 11 F.3d 873, 875 (9th Cir. 1993). The Ninth Circuit concluded that "applying the amendment under such circumstances violates the ex post facto clause" because the "offense" for ex post facto purposes was the defendant's original crime, not the conduct that violated the supervised release agreement. Id. at 875, 883; see also United States v. Liero, 298 F.3d 1175, 1178 (9th Cir. 2002) ("[W]e have held that the punishment imposed for violating the conditions of supervised release is itself a part of the original sentence."); United States v. Hanson, 936 F.3d 876, 883 (9th Cir. 2019) ("When the district court revoked Hanson's supervised release in 2017, it was required to apply the statutes as they existed in 2005 [when he committed his first child

pornography offense].").[2] Further, the Supreme Court has recognized that post-revocation penalties relate to the original offense of conviction. Johnson v. United States, 529 U.S. 694, 702 (2000). This conclusion that the offense for ex post facto purposes is the original crime makes sense given the following reasoning: "If the individual may be punished for an action that is not of itself a crime, the rationale must be that the punishment is part of the sanction for the original conduct that was a crime." United States v. Soto-Olivas, 44 F.3d 788, 790 (9th Cir. 1995).

Indeed, any other conclusion would produce patently unfair results. Specifically, if it were the case a supervised release violation constituted a new a separate crime, an individual required to sign a new supervised release agreement after each violation and resulting punishment, would thereby be exposed to indefinitely increasing conditions and penalties years after the date of the original offense conduct.[3] Such a rule would effectively allow the state to add new and more severe penalties to the conviction of an original offense years later simply by continually changing the conditions of supervision and the concomitant penalties. This is the very essence of an ex post facto violation.

Because Brown's alleged violation of his lifetime supervision conditions related to his original crime in 2006, and did not constitute a new offense, an ex post facto violation occurred when the state court adjudicated this case under the 2007 version of NRS 213.1243. Accordingly, because the Nevada Court of Appeals' decision that there was no ex post facto violation is contrary

---

[2] The Court finds no basis to distinguish supervised release in Nevada from that imposed federally, as both are imposed as part of the original sentence, have conditions, and authorize punishment for violating the conditions. See NRS 176.0931; 18 U.S.C. § 3583. Just as in federal cases, state lifetime supervision is and must be imposed at the time of the original sentence. NRS 176.0931.

[3] The Court acknowledges that the cases cited in this paragraph are federal criminal cases, but this Court looks to federal law on ex post facto claims. See McKenzie v. Day, 57 F.3d 1461, 1469 (9th Cir. 1995) (evaluating a state prisoner's habeas petition and explaining that Paskow is "the law of this circuit" on ex post facto claims).

to federal law, this court is not encumbered by deference to the Nevada Court of Appeals' decision on this ground. See Panetti v. Quarterman, 551 U.S. 930, 948 (2007) ("As a result of [the state court's] error, our review of petitioner's underlying . . . claim is unencumbered by the deference AEDPA normally requires"); Frantz v. Hazey, 533 F.3d 724, 737 (9th Cir. 2008) ("[W]here the analysis on federal habeas . . . results in the conclusion that § 2254(d)(1) is satisfied, then federal habeas courts must review the substantive constitutionality of the state custody de novo.").

Because there was a clear basis for Brown's trial counsel to have made an ex post facto violation argument, as outlined above, Brown demonstrates that his counsel's failure to do so—and failure to counsel Brown not to plead guilty—fell below an objective standard of reasonableness. This Court acknowledges that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also Richter, 562 U.S. at 105 ("Even under *de novo* review, the standard for judging counsel's representation is a most deferential one."). Even though there is nothing in the record explaining the basis behind Brown's trial counsel's inaction regarding this ex post facto issue, Brown overcomes this strong presumption of adequate assistance, voiding any deference owed to his trial counsel's actions, because there can be no reasonable professional judgment or strategic decision for failing to argue an ex post facto violation that would expose a client to a mere misdemeanor over a felony and related habitual criminal status.

Regarding prejudice, Brown's alleged violation(s) were only chargeable as a misdemeanor under the pre-2007 version of the statute, so, absent Brown's trial counsel's failures, Brown would not have been facing a new felony conviction and the State could not have sought habitual criminal status. See Nev. Rev. Stat. § 207.010 (explaining that unless a defendant is charged with a felony, the State is disallowed from using either the small or large habitual criminal statutes). Accordingly,

Brown demonstrates that there is a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and the result of this proceeding would have been different. Strickland, 466 U.S. at 694; Hill, 474 U.S. at 59.

Brown is entitled to federal habeas relief for ground 1(a).

### 3.   Ground 1(b)—Failure to Investigate and Advise Withdrawal of Plea

In ground 1(b), Brown alleges that his trial counsel failed to investigate defenses and failed to advise him to withdraw his guilty plea prior to sentencing despite the fact that the Information contained multiple unlawful charges pursuant to McNeill v. State.

### a.   State Court Determination

In affirming the denial of Brown's state postconviction petition for writ of habeas corpus, the Nevada Court of Appeals held:

> "Brown argued counsel was ineffective for advising him to enter a guilty plea to a single count of violation of lifetime supervision when two of the three alleged violations did not constitute a crime. He also argued counsel was ineffective for failing to advise him of the holding of McNeill v. State, 132 Nev. 551, 375 P.3d 1022 (2016), which was issued after he pleaded guilty but before he was sentenced and invalidated the two alleged violations.
>
> The McNeill decision analyzed the 2009 version of the lifetime supervision statute, NRS 213.1243, and concluded its plain language did not delegate authority to the parole board to impose conditions of lifetime supervision that are not enumerated in the statute. 132 Nev. at 555, 375 P.3d at 1025. Thus, McNeill did not announce new law, but rather clarified that defendants cannot be convicted of a violation of lifetime supervision when the condition allegedly violated was not listed in NRS 213.1243.
>
> Here, the information alleged Brown violated the following conditions: failing to participate in counseling, and/or failing to report, and/or failing to obtain permission before changing his address. Of those violations, failure to obtain permission prior to changing his address is the only one enumerated by statute. See NRS 213.1243(3)(a) (providing an offender may live at a location only if, among other things, "[t]he residence has been approved by the parole and probation officer assigned to the person"). Because McNeill was decided based on the plain meaning of the statute, a claim similar to that raised in McNeill was reasonably available to Brown's counsel at the time Brown entered his plea, as well as thereafter.

However, it does not necessarily follow that counsel was ineffective. Brown admitted to violating a lawful condition of the lifetime supervision agreement: failing to obtain permission prior to changing his address. He thus failed to demonstrate counsel's advice to plead guilty to a single count of violation of lifetime supervision or counsel's failure to advise him of the McNeill decision fell below an objective standard of reasonableness.

Further, in light of the totality of the circumstances, Brown's claim that he would have insisted on going to trial was not reasonable. Not only did he admit to the illegal conduct, [FN2]

> [FN2]  Brown failed to demonstrate that his attempt to register his new address with the police department would have been a defense to the allegation that he failed to obtain permission *prior* to moving.

but the negotiated terms prevented the State from opposing probation and allowed for a potential drop-down from a felony to a misdemeanor and own-recognizance release. Therefore, we conclude Brown has failed to demonstrate a reasonable probability of a different outcome had counsel put forth the arguments raised in McNeill or advised Brown of that opinion when it issued. See State v. Huebler, 128 Nev. 192, 203-04, 275 P.3d 91, 99 (2012) (observing that the prejudice prong of Hill begins with "a subjective assertion" but that "the validity and reasonableness of that subjective assertion must be evaluated through an objective analysis considering the totality of the circumstances"). Accordingly, we conclude the district court did not err by denying this claim without conducting an evidentiary hearing."

**b.    Analysis**

Brown entered his guilty plan on December 1, 2015, and was sentenced on October 27, 2016. Between these dates, on July 28, 2016, the Nevada Supreme Court decided McNeill, holding, in response to the State Board of Parole Commissioners imposing conditions not enumerated in NRS 213.1243 on lifetime supervision offenders, that the State Board of Parole Commissioners could not impose conditions beyond those listed in NRS 213.1243. McNeill v. State, 375 P.3d 1022, 1025 (Nev. 2016).

The State charged Brown with violating the following conditions of his lifetime supervision: "by failing to participate in counseling as deemed necessary by Nevada Division of

1 Parole and Probation and/or by failing to report to Nevada Division of Parole and Probation as

2 directed and/or by changing his address without first obtaining permission from his supervising

3 officer." Under McNeill, two of the three violations—failing to participate in counseling and

4 failing to report—were unlawful conditions.

5        The Nevada Court of Appeals found that even though Brown's trial counsel did not inform

6 Brown about McNeill, Brown failed to demonstrate deficiency because (1) although the State

7 charged Brown with violating three conditions of his lifetime supervision, Brown only pleaded

8 guilty to a single violation, (2) the guilty plea agreement does not define which condition was the

9 basis for the violation, and during his plea canvass, Brown only admitted guilt by way of the three

10 conditions being presented with the "and/or" conjunctive, and (3) regardless of the two unlawful

11 conditions mentioned in the Information and plea canvass, Brown admitted to violating a lawful

12 condition—failing to obtain permission prior to changing his address—and was charged and

13 convicted of only single count of violating his conditions. The Nevada Court of Appeals then found

14 that Brown failed to demonstrate prejudice because his claim that he would have insisted on going

15 to trial was not reasonable.

16        Brown's trial counsel never discussed McNeill or its implications with Brown. Because

17 McNeill invalidated two of the conditions that Brown was alleged to have violated, Brown's trial

18 counsel had a duty to inform Brown about McNeill. See Turner v. Calderon, 281 F.3d 851, 881

19 (9th Cir. 2002) (explaining that trial counsel is "required to give the defendant the tools he needs

20 to make an intelligent decision" regarding pleading guilty); see also Iaea v. Sunn, 800 F.2d 861,

21 865 (9th Cir. 1986) (explaining that "counsel have a duty to supply criminal defendants with

22 necessary and accurate information" regarding their guilty plea). The breach of this duty amounted

23 to deficiency on the part of Brown's trial counsel. This deficiency is especially troubling given

that there is nothing in the record demonstrating that Brown admitted to his trial counsel to having violated the single valid condition.[4] Thus, given the holding in McNeill, if Brown's trial counsel allowed Brown to be sentenced on the violation charge when Brown's actions only amounted to a violation of an invalid condition, which is not readily apparent, then Brown's trial counsel's deficiency is even more disturbing. Because the Nevada Court of Appeals' decision to the contrary involves an unreasonable application of Strickland, this Court is not encumbered by deference to the Nevada Court of Appeals' decision on this ground. See Panetti, 551 U.S. at 948; Frantz, 533 F.3d at 737.

As was discussed in the background section of his order *supra*, Brown was charged with robbery with the use of a deadly weapon in a different case after his arraignment in this case. At Brown's original sentencing on March 31, 2016, Brown's trial counsel stated that Brown did not want to go through with sentencing in his case until after his robbery trial because he "believe[d] that there [were] still some gray areas for the trial that . . . would definitely give . . . some additional mitigating arguments" in the current case. Brown's original sentencing date was then continued. Thereafter, on September 20, 2016, after Brown's robbery trial had been continued several times and Brown's sentencing in the current case had been continued several times, Brown's trial counsel informed the state court that Brown's robbery trial would be taking place in March 2017. Brown's trial counsel requested that Brown's sentencing be continued until after that trial took place. The trial court refused and ordered the sentencing to take place the next month. Before that sentencing could take place, Brown filed a *pro se* motion to withdraw his guilty plea, arguing, in part, that his "plea agreement . . . is now 'defective.'" Brown's motion was apparently never addressed. At the

---

[4] During Brown's arraignment, Brown only admitted guilt to the three conditions read in the conjunctive.

sentencing hearing on October 27, 2016, Brown's trial counsel sought another continuance and answered in the affirmative when asked if there was "any cause or reason why sentencing should not proceed." The state court disallowed any further continuances and sentenced Brown. A year and a half later, once Brown learned of the McNeill decision, he filed a motion to withdraw his guilty plea, arguing, in part, that (1) he relied on his trial counsel's advice that it was in his best interest to plead to the single violation that incorporated all three violated conditions because the State could charge him with three separate violations, and (2) he was unaware when he entered his guilty plea that "the Nevada State Board of Parole Commissioners had no authority to impose additional lifetime supervision conditions not enumerated in the statute."

In addition to Brown's trial counsel's failure to abide by his legal obligation of informing Brown about McNeill to keep him abreast of necessary and accurate information on his case, as was discussed previously, Brown's trial counsel's deficiencies regarding McNeill extend to other issues too. First, Brown and his trial counsel desired a continuance of his current case until after his robbery trial had concluded because they believed that the robbery case had some "legitimate issues," including "the victim on that case sa[ying] that [Brown] didn't do" the robbery, which would reflect favorably on Brown in the sentencing in this case. To that end, Brown's trial counsel could have utilized McNeill as a basis to seek withdrawal of Brown's guilty plea to postpone the sentencing. Second, Brown's trial counsel could also have utilized McNeill as a basis to seek withdrawal of Brown's guilty plea to highlight to the state court that two of the three conditions listed in the Information were unlawful. It is unclear from the record whether the state court otherwise knew of McNeill's impact on Brown's case, meaning the state court likely considered all three conditions in sentencing Brown on the single violation. These omissions on the part of Brown's trial counsel were outside the range of professional competent assistance required under

Strickland. Further, these omissions are compounded by Brown's trial counsel's failures regarding the ex post facto issue, as is discussed in ground 1(a). Indeed, regardless of Coleman, Brown's trial counsel could have utilized Paskow, which was decided more than two decades prior, and its progeny to advocate for the reduction of Brown's alleged violation of his one remaining lawful condition to a misdemeanor pursuant to NRS 213.1243 as it existed in 2006 at the time of Brown's original crime.

Like ground 1(a), this Court acknowledges that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also Richter, 562 U.S. at 105. Even though there is nothing in the record explaining the basis behind Brown's trial counsel's inaction regarding McNeill, Brown overcomes this strong presumption of adequate assistance, voiding any deference owed to his trial counsel's actions, because there can be no reasonable professional judgment or strategic decision behind failing to inform a client about relevant new authority and using that relevant new authority to the benefit of the client.

Turning to prejudice, Brown moved twice to withdraw his guilty plea: once prior to sentencing based on the prosecutor's coercion and once after sentencing when he learned about McNeill. And importantly, the latter motion demonstrated that the inclusion of the two unlawful conditions was a main consideration in Brown's decision to plead guilty. Because Brown desired to withdraw his guilty plea prior to sentencing and there was a meritorious basis for such a motion at the time under McNeill, the standard under Hill is met: there is a reasonable probability that, but for his trial counsel's deficiency, Brown would have chosen to withdraw his guilty plea and insisted on going to trial.

Brown is entitled to federal habeas relief for ground 1(b).

**B.     Ground 2—Validity of Guilty Plea**

In ground 2, Brown alleges that he did not enter his guilty plea voluntarily, knowingly, and intelligently because his trial counsel ineffectively failed to tell him two of the conditions in his guilty plea agreement were invalid.

**1.     Legal Standard**

The federal constitutional guarantee of due process requires that a guilty plea be knowing, intelligent, and voluntary. Boykin v. Alabama, 395 U.S. 238, 242 (1969). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). For a plea to be knowing, intelligent and voluntary, the defendant must be advised of the direct consequences of the plea. Brady v. United States, 397 U.S. 742, 755 (1970). A direct consequence has "a definite, immediate and largely automatic effect on the range of the defendant's punishment[.]" Torrey v. Estelle, 842 F.2d 234, 236 (9th Cir. 1988). "Before a court may accept a defendant's guilty plea, the defendant must be advised of the 'range of allowable punishment' that will result from his plea." Id. at 235. The validity of a "plea can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749.

**2.     State Court Determination**

In affirming the denial of Brown's state postconviction petition for writ of habeas corpus, the Nevada Court of Appeals held:

> Brown also argues the district court erred by denying his claim challenging the validity of his guilty plea without conducting an evidentiary hearing. Brown asserted that his plea was not knowingly and voluntarily entered because counsel was ineffective in failing to advise Brown of the unlawful conditions in his lifetime supervision agreement. After sentencing, a district court may permit a petitioner to withdraw a guilty plea where necessary "[t]o correct manifest injustice." NRS

176.165. "A guilty plea entered on advice of counsel may be rendered invalid by showing a manifest injustice through ineffective assistance of counsel. Manifest injustice may also be demonstrated by a failure to adequately inform a defendant of the consequences of his plea." Rubio v. State, 124 Nev. 1032, 1039, 194 P.3d 1224, 1228-29 (2008) (footnote and internal quotation marks omitted). We review a district court's manifest injustice determination for abuse of discretion but review claims of ineffective assistance of counsel de novo. Id. at 1039, 194 P.3d at 1229. As discussed above, Brown has not demonstrated ineffective assistance of trial-level counsel. Therefore, we conclude the district court did not abuse its discretion by denying this claim without conducting an evidentiary hearing.

### 3.    Analysis

Because McNeill was not decided until after Brown entered his guilty plea, the Nevada Court of Appeals reasonably determined that Brown failed to demonstrate that his plea was not knowing, voluntary, or intelligent at the time it was entered. The Court does not find as argued by Brown here that his counsel should have anticipated the decision in McNeill and advised him accordingly prior to his plea. Given the applicable deferential standard here and the lack of unequivocal foreshadowing of the decision in McNeill, the Court is unpersuaded by Brown's argument.

Brown is not entitled to federal habeas relief for ground 2.

## IV.    CONCLUSION[5]

**IT IS THEREFORE ORDERED** that the first-amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 25) is **GRANTED** as to grounds 1(a) and 1(b). The following are vacated pursuant to this order: Petitioner Lamar Brown's (1) judgment of conviction filed on November 2, 2016, in case number C310671-1, in the Eighth Judicial District Court for the State of Nevada, (2) sentence in case number C310671-1, and (3) guilty plea. Within 30 days

---

[5] Brown requests an evidentiary hearing. The Court declines to do so because it is able to decide the petition on the pleadings.

of the later of (1) the conclusion of any proceedings seeking appellate or certiorari review of this court's judgment, if affirmed, or (2) the expiration for seeking such appeal or review, the state court must hold a status conference to consider the next steps, if any, in this matter given that Brown's alleged violation of his lifetime supervision conditions (1) does not constitute a new offense as outlined in ground 1(a) and (2) is only punishable as a misdemeanor under Nev. Rev. Stat. § 213.1243 as it existed in 2006 at the time of Brown's original crime.

**IT IS FURTHER ORDERED** that, to the extent necessary, a certificate of appealability is denied as to ground 2.

**IT IS FURTHER ORDERED** that the Clerk of Court is instructed to (1) substitute Ronald Oliver as a respondent for Respondent State of Nevada, (2) enter judgment, (3) provide a copy of this order and the judgment to the Clerk of the Eighth Judicial District Court for the State of Nevada in connection with that court's case number C310671-1, and (4) close this case.

**Dated:** June 26, 2024

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**